UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DESCHUTTER, et al.,

      Plaintiffs,

                                   Case No. 1:24-cv-114

v.

                                   Hon. Hala Y. Jarbou

BURT THOMPSON, et al.,

      Defendants.

_____/

## OPINION

Plaintiffs Anthony and Renee DeSchutter, a married couple, filed this 42 U.S.C. § 1983 lawsuit against the Michigan Department of Natural Resources ("DNR"), the Antrim County Road Commission ("ACRC"), Burt Thompson (an Engineer Manager employed by the ACRC), Peter Hoogerhyde (a commissioner on the ACRC), and Kevin Giar (a commissioner on the ACRC). (Compl. ¶¶ 3-7, ECF No. 1.)  Plaintiffs allege that Defendants violated their Fifth and Fourteenth Amendment rights by impeding their ability to use and enjoy their home.  They seek proper compensation for the alleged taking.

Before the Court are Defendants' motions to dismiss.  The DNR filed a motion to dismiss for lack of subject matter jurisdiction—arguing that it is immune from Plaintiffs' claims via the Eleventh Amendment—and for failure to state a claim.  (ECF No. 8.)  The ACRC, Thompson, Hoogerhyde, and Giar jointly filed a motion to dismiss, arguing that Plaintiffs failed to state a claim against each defendant.  (ECF No. 11.)  For the reasons stated herein, the Court will grant both motions to dismiss.

## I. BACKGROUND

Plaintiffs are a married couple that own property on either side of Pinney Bridge Road, a seasonal dirt road in Antrim County, Michigan.  (Compl. ¶¶ 12-14.)  Plaintiffs rely on Pinney Bridge Road to access their property.  (*Id.* ¶ 18.)  During the winter months, Pinney Bridge Road is a DNR-designated snowmobile trail, serving as part of Michigan's statewide trail network for recreational activities.  (*Id.* ¶ 19; Mich. Comp. Laws § 324.72114.)  Plaintiffs personally plow Pinney Bridge Road after snowfall so they can access their property.  (Compl. ¶ 17.)  A local snowmobile club, the Jordan Valley Trails Council ("JVTC"), obtains permits each year from the ACRC to groom Pinney Bridge Road.  (*Id.* ¶ 21.)  The JVTC's grooming efforts, which make Pinney Bridge Road more suitable for snowmobiling, hinder Plaintiffs' ability to access their property via personal vehicle.  (*Id.* ¶¶ 24, 28.)

Plaintiffs allege the snowmobilers and groomers that use Pinney Bridge Road engage in harmful and harassing conduct.  Without naming any individuals involved in this conduct, Plaintiffs claim that local snowmobilers and groomers use snowmobiles to spray them with snow, block their travel on Pinney Bridge Road, and threaten to destroy their property.  (*Id.* ¶¶ 30-34.)  When Plaintiffs filed complaints with Antrim County officials, the sheriff's department responded by informing Plaintiffs they could not plow Pinney Bridge Road.  (*Id.* ¶ 38.)  In the wake of these complaints, Thompson "demanded that Plaintiffs meet with him and members of the [ACRC], including Defendant Hoogerhyde and members of the [JVTC], [the DNR], and the Antrim County Sheriff Department."  (*Id.* ¶ 41.)  At the meeting, which took place on March 9, 2020, Thompson allegedly "attempted to intimidate Ms. DeSchutter into agreeing to stop plowing and allow grooming on the road in front of and along their property."  (*Id.* ¶¶ 42-43.)  Months later, Thompson allegedly "falsely and fraudulently issued a grooming permit to the [DNR]" to allow for continued snowmobiling.  (*Id.* ¶ 53.)

2

These grooming permits are renewed annually for Pinney Bridge Road.  (*Id.* ¶ 66.) According to Plaintiffs, the ACRC, in conjunction with the DNR, want to expand the snowmobile trail onto Plaintiffs' property.  (*Id.* ¶¶ 68, 70-71.)

Plaintiffs claim Defendants deprived them of the following rights:

a. The right to be free from undue intimidation and harassment by government officials and agencies;
b. The right to be secure in their property and protected from harassment and physical and psychological threats;
c. The right to liberty protected in the substantive component of the Due Process Clause of the Fifth and Fourteenth Amendments, which includes personal safety, freedom from captivity and security in one[']s person and property;
d. The right to fair treatment guaranteed and protected by the equal protection clause of the [F]ourteenth [A]mendment;
e. The right to access their property;
f. The right to reasonable use of their property without government interference;
g. The right to free speech protected by the [First] Amendment of the United States Constitution; and
h. Other rights guaranteed by the Michigan and United States Constitutions.

(*Id.* ¶¶ 78.a-h.)  In response to these claims, Defendants filed motions to dismiss.

## II. STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

If a challenge is asserted to the Court's subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021).  Moreover, the Court "must" consider a jurisdictional challenge first because Defendants' other arguments for relief are moot if the Court lacks jurisdiction.  *See id.*

Motions challenging subject matter jurisdiction may be based on a "facial" or a "factual" attack.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true."  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  If Eleventh Amendment sovereign immunity applies, the Court lacks subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 863 (6th Cir. 2024).

**B. Motion to Dismiss for Failure to State a Claim**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for failure to state a claim.  "While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Courts are generally bound to consider only the complaint when resolving a motion to dismiss. *Wysocki v. Int'l Bus. Mach. Corp.*, 60 F.3d 1102, 1104 (6th Cir. 2010).  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

#### A. DNR's Motion to Dismiss

The DNR argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims against the agency due to Eleventh Amendment immunity. The "Eleventh Amendment bars suit against a state or its agencies in federal court." *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 732 (6th Cir. 2022). This bar includes "private suits commenced against a state by its own citizens." *Id.* (quoting *Hans v. Louisiana*, 134 U.S. 1, 18-19 (1890)). The Eleventh Amendment "provides broad protections for states to dismiss private suits in federal court," but "the immunity is not limitless." *Id.* If the "state has waived immunity," "Congress has expressly abrogated the states' sovereign immunity," or if "the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies," then the state does not enjoy Eleventh Amendment immunity. *Id.* (cleaned up). The "*Ex Parte Young* doctrine [only] allows suits . . . for declaratory or injunctive relief against state officers in their official capacity." *Reed v. Goertz*, 598 U.S. 230, 234 (2023). This exception only applies to an officer that has "some connection with the enforcement of the act" the plaintiff challenges. *Ex Parte Young*, 209 U.S. at 157.

Plaintiffs name the DNR as a defendant. (Compl. ¶ 7.) The DNR is a State of Michigan agency, entitled to Eleventh Amendment immunity. The DNR has not waived immunity, Congress has not expressly abrogated sovereign immunity for takings claims, and Plaintiffs named the agency—not an officer—as a defendant; therefore, none of the exceptions apply. The DNR is protected by immunity.

Plaintiffs argue that *Knick v. Township of Scott*, 588 U.S. 180 (2019), provides for "a claim in Federal Court against a state or state agency for the taking of property without due process." (Pls.' Resp. to DNR Mot. 6, ECF No. 19.) The Court disagrees. In *Knick*, the Supreme Court evaluated a claim against a municipality, not a state, and narrowed the ruling to whether a plaintiff

needed to exhaust the state-litigation requirement before seeking relief in federal court.  588 U.S. at 187.  Plaintiffs fail to recognize a significant difference between *Knick* and the case before the Court: unlike state agencies, such as the DNR, "municipalities," like the government entity in *Knick*, "are not entitled to the protection of the Eleventh Amendment."  *Skatemore*, 40 F.4th at 733-34; *see also, e.g.*, *Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003).  *Knick* does nothing to overrule or question the application of Eleventh Amendment immunity in takings cases.  *See Skatemore*, 40 F.4th at 733-34.

The Court lacks subject matter jurisdiction over Plaintiffs' claims against the DNR because the DNR is entitled to immunity under the Eleventh Amendment.  The Court will grant the DNR's motion to dismiss.

### B. Antrim County Road Commission, Thompson, Hoogerhyde, and Giar Motion to Dismiss

Plaintiffs allege various constitutional claims against the ACRC, Thompson, Hoogerhyde, and Giar.  They bring § 1983 claims against all defendants and a Takings Clause claim against the ACRC.  The Court addresses the claims against each defendant below.

### 1. Thompson

Plaintiffs list Thompson as a defendant for their § 1983 claims.  They allege that "Defendant Burt Thompson is the Engineer Manager employed by the Defendant [ACRC]." (Compl. ¶ 4.)  Plaintiffs also allege that "Antrim County officials, including Defendant Burt Thompson, along with [DNR] personnel engaged in a concerted effort to force Plaintiffs into surrendering their property rights and stop Plaintiffs from plowing the road to access their property and leave snow on the road for snowmobiling" (*id.* ¶ 36); however, they do not describe Thompson's personal involvement in any concerted efforts or collusion beyond this conclusory statement.

6

As to his specific actions, Plaintiffs allege that Thompson "demanded [they] meet with him and members of the [ACRC] including Defendant Hoogerhyde and members of the [JVTC], [DNR] and the Antrim County Sheriff Department."  (*Id.* ¶ 41.)  During this meeting, held on March 9, 2020, Plaintiffs claim Thompson "attempted to intimidate Ms. DeSchutter into agreeing to stop plowing and allow grooming on the road in front of and along their property," and his "conduct at the meeting further demonstrates . . . collu[sion] with the snowmobile groups that were threatening and intimidating Plaintiffs."  (*Id.* ¶¶ 43, 45.)  They do not describe the nature of this alleged intimidation nor how his conduct demonstrates collusion.  Plaintiffs also allege Thompson "falsely and fraudulently claimed that Plaintiffs agreed to leave 2 inches of snow on the road and further allow the [JVTC] to groom the road," and then "continued to engage in a campaign of intimidation" "throughout the spring, summer and fall of 2020."  (*Id.* ¶¶ 48, 50.)  Plaintiffs deny giving this consent.  (*Id.*)  Thompson then, allegedly, "falsely and fraudulently issued a grooming permit to the [DNR] stating that Plaintiffs had consented to the permit."  (*Id.* ¶ 54.)  Plaintiffs contend this amounts to a conspiracy in which Thompson falsely published documents to get Pinney Bridge Road placed on the DNR trail map, which interferes with their access to property. (*Id.* ¶ 56.)  Separately, Plaintiffs claim that Thompson violated their First Amendment rights when he allegedly removed signs from their property.  (*Id.* ¶ 51.)

For § 1983 claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  As best as the Court can tell, Plaintiffs allege Thompson violated their rights through intimidation and threats, by violating substantive due process, by engaging in a civil conspiracy, by interfering with their right to access property, and by infringing upon their First Amendment rights.

#### (a) Intimidation and Threats

"Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corr*, 499 F. App'x 453, 455 (6th Cir. 2012).  However, claims of intimidation and threats could potentially constitute a substantive due process violation if the conduct "shocks the conscience." *Mackey v. Rising*, No. 20-13408, 2021 WL 4034226, at *3 (E.D. Mich. Sept. 3, 2021) (citing *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002)).

Plaintiffs claim that Thompson's intimidation and threats are, in and of themselves, a constitutional violation.  Precedent indicates otherwise.  However, the Court will address the threats and intimidation as a substantive due process claim below.

#### (b) Substantive Due Process

"Substantive due process is the doctrine that governmental deprivations of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed." *Prado v. Thomas*, 804 F. App'x 332, 343 (6th Cir. 2020) (internal punctuation omitted) (quoting *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014)).  "It protects a narrow class of interests enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience." *Id.* (internal quotations omitted) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003)).

Plaintiffs' substantive due process claims must be different from their claims under the Takings Clause.  *See Warren v. City of Athens*, 411 F.3d 697, 706-07 (6th Cir. 2005) ("[S]ubstantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff.").  To that end, the rights Plaintiffs claim under "the substantive component of the Due Process Clause . . . include[] personal safety, freedom from captivity and security in one[']s person

8

and property." (Compl. ¶ 78.c.)  However, because "[i]dentifying unenumerated rights carries a serious risk of judicial overreach," courts must "'exercise[] the utmost care whenever we are asked to break new ground in this field.'" *Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1821-22 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  Abiding by the *Glucksberg* framework, the Court must first provide a "careful description of the asserted fundamental liberty interest." *Id.*  Second, the Court must determine whether the liberty interest is "objectively, deeply rooted in this Nation's history and tradition." *Id.*

Plaintiffs' liberty interests must be defined with more specificity than the general right to personal safety, freedom from captivity, and security in one's person and property,[1] *see Myers v. Wren*, Nos. 22-2148/23-1807, 2024 WL 1506452, at *4 (6th Cir. April 3, 2024) (defining the liberty interest as access to specific property), and the alleged violations must apply to Thompson's specific actions.  Given the allegations, for a substantive due process claim against Thompson, Plaintiffs' liberty interests can best be described as freedom from disagreeable government permits (for which there is no right deeply rooted in the history and tradition of our nation)[2] and freedom from threats and intimidation.

As indicated above, if the government official's conduct, including threats and intimidation, "shocks the conscience," it would violate substantive due process.  To shock the conscience, the government official's behavior must be "'so brutal and so offensive to human dignity' that it violate[s] [the] 'decencies of civilized conduct.'"  (*Kerchen v. Univ. of Mich.*, 100 F.4th 751, 763 (6th Cir. 2024) (quoting *Rochin v. California*, 342 U.S. 165, 166 (1952)).  This

---

[1] While there is a right to be "secure in one's home," it is a Fourth Amendment protection against unreasonable seizure of property, concerned with the government "interfering with [a plaintiff's] enjoyment of their home and personal belongings" after the government has possessed a home. *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *7 (6th Cir. Nov. 3, 2022).  Plaintiffs do not bring a claim of this nature.

[2] Plaintiffs may have a property interest related to the permit's impact on their property for procedural due process purposes, but they do not bring a procedural due process claim.

standard "'sets a high bar' and only penalizes government actions that offend 'traditional ideas of fair play and decency' such that they violate the Constitution." *Id.* (quoting *Range v. Douglas*, 763 F.3d 573, 589-90 (6th Cir. 2014)).  An abuse of power that "intend[s] to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).  This standard requires the government official to have made a "*deliberate* decision[] . . . to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (emphasis in original).  Substantive due process claims apply to government officials that act with "a purpose to cause harm." *Cnty. of Sacramento*, 523 U.S. at 854.

Plaintiffs' claim against Thompson alleges he attempted to abuse his power to gain their consent to issue grooming permits.  Thompson's actions do not shock the conscience for two reasons.  First, the complaint does not plausibly allege that Thompson engaged in this conduct with the intent to harm Plaintiffs.  Plaintiffs claim his intimidation was in an effort to gain their consent to groom the designated trail, not to deprive them of their property rights.  Even when construing the facts in the light most favorable to Plaintiffs, Thompson's intent was to maintain snowmobile conditions, not harm Plaintiffs.  Thompson may have acted with indifference to Plaintiffs' property rights, but such conduct does not rise to the level of conscience-shocking behavior necessary to support a substantive due process claim.  Second, Plaintiffs do not allege these intimidation tactics worked.  They claim Thompson never received their consent to issue the grooming permit, despite the alleged intimidation.  Further, Plaintiffs claim it was not the intimidation that caused the constitutional injuries they allege, but Thompson's conspiracy to issue grooming permits without their consent.  Alleging injury from a civil conspiracy under § 1983 is

a separate claim, analyzed below.  Plaintiffs' substantive due process claims against Thompson
will be dismissed.

### (c) Civil Conspiracy Through Fraud

"A civil conspiracy claim under § 1983 . . . lies where there is 'an agreement between two
or more persons to injure another by unlawful action.'"  *Robertson v. Lucas*, 753 F.3d 606, 622
(6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  In order for
Plaintiffs to prevail on a § 1983 civil conspiracy claim, they "must show that (1) a single plan
existed, (2) the conspirators shared a conspiratorial objective to deprive [them] of [their]
constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that
caused the injury."  *Prado v. Thomas*, 804 F. App'x 332, 343-44 (6th Cir. 2020) (internal
punctuation, quotation, and citation omitted).

Plaintiffs fail to establish any conspiracy, pointing to no plausible agreements, actual or
implied, between alleged conspirators to violate Plaintiffs' constitutional rights.  They merely offer
conclusory statements that Thompson orchestrated a conspiracy.  Even if, assuming arguendo,
Plaintiffs' inability to access their property constitutes a cognizable constitutional injury, Plaintiffs
allege no shared conspiratorial objective related to their property access.  Plaintiffs allege the
conspiracy's objective was to issue grooming permits, not an effort aimed at depriving them of
their property access.[3]

In short, Plaintiffs merely suggest that Thompson engaged in a conspiracy.  They do not
provide any support for the conspiracy, nor do they show that the conspiracy was directed at

---

[3] Additionally, Plaintiffs suggest that Thompson's fraudulent statements, regarding Plaintiffs' consent to the grooming permit, serve as overt actions in furtherance of this alleged conspiracy.  To allege fraud, Plaintiffs would need to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  They do not allege Thompson's fraud with the necessary particularity, failing to show when he made these statements and which documents he allegedly falsified in the permit process.  *See New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2006).

depriving them of their rights.  The conclusory allegations in the complaint fall short of properly stating a claim.  Their § 1983 conspiracy claim against Thompson will be dismissed.

### (d) Right to Access Property

Plaintiffs claim they have a general right to access their property that is separate from their Fifth Amendment takings claim.   (Compl. ¶ 78.e.)   Construing their complaint in the most favorable light, Plaintiffs allege that when Thompson issued the grooming permit, he hindered their access to property on Pinney Bridge Road.

It is unclear where, outside a potential Fifth Amendment takings claim, Plaintiffs have a right to access their property.  Plaintiffs argue that a right to access property exists under 42 U.S.C. § 1982.  (Pls.' Resp. to ACRC Mot. 10, ECF No. 22.)

"It is well-settled that one must plead and prove racial animus to succeed on a section 1982 claim."  *Allen v. Louisville City Police Dep't*, No. 91-6277, 1992 WL 168097, at *2 (6th Cir. July 17, 1992) (citing *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968)).  Plaintiffs do not allege any racial animus or discrimination.  Plaintiffs' claim for a violation of their right to access their property will be dismissed.

### (e) First Amendment Rights

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it fails to state a claim).

"[F]ederal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005) (citing *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)).  In Michigan, federal courts use a three-year limitations period for § 1983 claims. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020).  "The statutory period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Id.* (internal quotation and citation omitted).

As the basis for their First Amendment claim, Plaintiffs allege that Thompson took signs from their property as part of an intimidation campaign "throughout the spring, summer and fall of 2020."[4]  (Compl. ¶¶ 50-51.)  Plaintiffs must have noticed the signs were missing in 2020 to allege Thompson took the signs in that timeframe.  Thus, the three-year limitations period for a § 1983 claim regarding this alleged sign stealing would end, at the latest, on December 31, 2023.  Plaintiffs filed their complaint on February 5, 2024, after the limitations period concluded.  Because the complaint shows that relief is barred by the statute of limitations for this § 1983 claim, it will be dismissed.

Plaintiffs fail to state a First Amendment claim against Thompson.

### 2. Hoogerhyde

Plaintiffs list Hoogerhyde as a defendant for their § 1983 claims.  Plaintiffs allege that "Defendant Hoogerhyde is a commissioner that sits on the Board of the [ACRC]."  (Compl. ¶ 5.)  Construing the complaint favorably to Plaintiffs, they allege that Hoogerhyde was part of the March 9, 2020 meeting between Plaintiff Renee DeSchutter and town officials.  (*Id.* ¶¶ 41-42.)

---

[4] Plaintiffs allege other instances in which government officials removed signs from their property, but they do not specifically allege Thompson engaged in this conduct.  (Compl. ¶ 61.)

However, there are no further allegations against Hoogerhyde.  In fact, while Hoogerhyde attended the March 9, 2020 meeting, Plaintiffs suggest that only Thompson engaged in intimidation tactics. (*Id.* ¶ 43.)

Plaintiffs contend, in their brief—not their complaint—that Hoogerhyde was the "driving force behind the ACRC's unconstitutional actions," and that he "knew of and encouraged" threats against Plaintiffs.  (Pls.' Resp. to ACRC Mot. 10-11.)  Plaintiffs' complaint provides no allegations against Hoogerhyde that support these claims, nor does their brief provide any supporting facts. Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiffs have not met this standard with regards to Hoogerhyde.  Because Plaintiffs fail to state a claim against Hoogerhyde, their claims against Hoogerhyde will be dismissed.

### 3. Giar

Plaintiffs list Giar as a defendant for their § 1983 claims.  Plaintiffs' complaint makes even fewer mentions of Giar.  The only paragraph that mentions him by name states: "Defendant Kevin Giar is a commissioner sitting on the Board of the Antrim County Road Commission."  (Compl. ¶ 7.)  There are no other allegations that specifically refer to Giar.  Plaintiffs allege, generally, that "[d]efendants have violated Plaintiffs' [Fifth] and [Fourteenth] [A]mendment rights by using their positions as government officials to threaten and intimidate Plaintiffs into giving in to the demands of a local snowmobile club" (*id.* ¶ 9), and that "[d]efendants conspired to falsely publish documents, leading to Pinney Bridge Road . . . being placed on the [DNR] Trail map and the issuance of a grooming permit" (*id.* ¶ 56).  These allegations presumably include Giar, but the complaint does not discuss his specific conduct.

As discussed, for § 1983 claims, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556

U.S. at 676.  Plaintiffs have not met this standard with regards to Giar.  The complaint does not mention any specific actions Giar took.  Plaintiffs fail to state a claim against Giar; their claims against Giar will be dismissed.

### 4. Antrim County Road Commission

Plaintiffs assert § 1983 claims and Fifth Amendment Takings Clause claims against the ACRC.

### (a) Takings Clause Claims

Plaintiffs base their Takings Clause claim on the ACRC's "goal to place an unauthorized snowmobile trail on Plaintiffs['] property.  (Compl. ¶ 84.)  This "snowmobile trial . . . *would* be placed on Plaintiffs['] property."  (*Id.* ¶ 86 (emphasis added).)  The alleged taking has not occurred yet, which means the Court must address whether this claim is ripe.

"Generally, a claim may not be adjudicated on its merits unless it is ripe."  *Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)).  "A claim is unripe when it 'is anchored in future events that may not occur as anticipated, or at all.'"  *Id.* (quoting *Nat'l Rifle Ass'n of Am.*, 132 F.3d at 284).  "Of primary importance is 'whether the issues tendered are appropriate for judicial resolution,' and, if so, the degree of 'hardship to the parties if judicial relief is denied' before the claim is allowed to ripen further."  *Id.* (quoting *Young v. Klutznick*, 652 F.2d 617, 625 (6th Cir. 1981)).

Plaintiffs allege only future, potential takings.  They recognize that any encroachment onto their property has not yet occurred, and only "would" occur if the ACRC extends a snowmobile trail onto their property.  This claim is anchored in future events that may not occur as anticipated.  If Plaintiffs alleged that the ACRC would imminently place a snowmobile trail on their property, with specifics of the trail already established, the Court could consider the claim ripe because failure to adjudicate could cause hardship to the parties.  *See Nat'l Rifle Ass'n of Am.*, 132 F.3d at

285-86 (discussing hardship in terms of the cost to amend already established plans and imminent economic impact to property).  However, even when construing the complaint in the light most favorable to Plaintiffs, any potential takings would not occur until after the Antrim County District Court determines whether Plaintiffs have property rights over Pinney Bridge Road.  Plaintiffs' Takings Clause claim is based on a hypothetical, non-imminent plan to extend a snowmobile trail onto their alleged property; thus, it is not ripe for adjudication by the Court.

### (b) Other § 1983 Claims

A municipal entity like the ACRC is liable under § 1983 only if its policy or custom caused the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To state a claim against the ACRC under *Monell*, Plaintiffs must sufficiently plead an underlying constitutional violation.  *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").  Because Plaintiffs have not adequately alleged such a violation, they do not state a § 1983 claim against the ACRC.[5]  Consequently, the § 1983 claims against the ACRC will be dismissed.

### C. Plaintiffs' Motion to Amend the Complaint

As part of their response briefs, Plaintiffs ask the Court for the opportunity to amend their complaint if the allegations do not suffice to state a claim.  However, Plaintiffs offer no facts that bolster their claims against Defendants.  Further, the Court's local rules require a party to file a proposed amended pleading where, as here, an amendment to that pleading requires leave of the

---

[5] Even if Plaintiffs had properly alleged an underlying constitutional violation, other than a conclusory statement in paragraph 81 of their complaint, they allege no policy or custom that caused any constitutional violation, thus failing to state a *Monell* claim.

Court.  *See* W.D. Mich. LCivR 6.7(f).  Plaintiffs have not filed a proposed amended complaint.
Therefore, the motion will be denied.

## IV. CONCLUSION

Plaintiffs' claims against the DNR are barred by Eleventh Amendment immunity.
Additionally, Plaintiffs fail to state any claims against the remaining defendants.  Accordingly,
Defendants' motions to dismiss will be granted.

The Court will enter an order and judgment consistent with this Opinion.


Dated: September 30, 2024                          /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE